IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| LLOYD CURRY, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, FCI JESUP, <br><br> Respondent. | CIVIL ACTION NO.: 2:25-cv-4 |

### REPORT AND RECOMMENDATION

Petitioner Lloyd Curry ("Curry"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss Curry's Petition, and Curry filed a Response. Docs. 7, 10. For the following reasons, I **RECOMMEND** the Court **DENY in part** and **GRANT in part** Respondent's Motion to Dismiss, **DISMISS** Curry's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Curry *in forma pauperis* status on appeal.

### BACKGROUND

Curry was convicted in the District Court for the Eastern District of Louisiana of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Curry was sentenced to 336 months in prison, which was reduced to 220 months in prison. Doc. 7-1 at 8, 9. Curry has a statutory release date of February 14, 2026, via good conduct release, and home detention eligibility of August 14, 2025. Id.

In his Petition, Curry asserts that the Bureau of Prisons ("BOP") has misinterpreted the meaning of "coterminous" relating to his 28-year state prison sentence as a reason to deny him residential reentry center placement. Doc. 1 at 2. Curry states there have been several court orders issued directing the BOP to remove all detainers in Curry's file relating to his state sentence. Id. at 6. Curry also asserts staff have retaliated against him due to his complaints, as his case manager immediately raised his security level from low to medium once Curry filed an administrative remedy request. Id. at 2, 6. Curry asks the Court to direct the BOP to remove the detainer and to release him immediately. Id. at 7.

Respondent asks this Court to dismiss Curry's Petition because Curry failed to exhaust his administrative remedies regarding the claims he raises in this Petition. Doc. 7 at 3. Respondent also asserts Curry has no liberty interest in First Step Act ("FSA") credits and is ineligible to apply his FSA credits toward his release. Respondent further asserts this Court lacks jurisdiction to review Curry's claims under the Administrative Procedures Act ("APA") and has no authority to determine Curry's place of confinement. Id. at 3–4.

## DISCUSSION

**I.  Curry Exhausted His Available Administrative Remedies Before Filing His Petition**

Respondent states that Curry failed to exhaust his administrative remedies because he failed to file his administrative remedy request at the institutional level (BP-9) before filing at the regional level (BP-10). Doc. 7 at 4. Respondent contends that Curry was informed upon rejection of his BP-10 that he was to file a BP-9 before he filed an appeal at the BP-10 level. Respondent maintains Curry did not submit an administrative remedy request at each of the requisite levels before filing his Petition and his failure to do so is a failure to exhaust. Id.

Curry contends he did exhaust his administrative remedies because, under the applicable Regulations, he did not receive a response to his "sensitive" administrative remedy filing within

2

the requisite time.  Doc. 10 at 2.  Thus, he filed a BP-11 with the Central Office in December 2024, and the time for the Central Office to respond to his remedy request expired on January 10, 2025.  It was only then, Curry asserts, that he filed his Petition.  Id.

### A. Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'" Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6,

3

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a § 2241 petitioner need only exhaust "available" administrative remedies. Blevins v. FCI Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)). As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the administrative process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it, and (3) where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2 (N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024); Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025) (same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

Although a petitioner must ordinarily exhaust administrative remedies before filing a § 2241 petition, there are some circumstances where exhaustion may be excused. In McCarthy v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the

---

2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is "some doubt as to whether the agency was empowered to grant effective relief"; and (3) when "the administrative body is shown to be biased or has otherwise predetermined the issue before it . . . ." 503 U.S. 140, 146–48 (1992) (internal quotation marks omitted) superseded by statute, 42 U.S.C. § 1997e(a). The Eleventh Circuit has not spoken directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy circumstances, but in an unpublished opinion, has suggested it can be. See Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241 petitions)). District courts in this Circuit have similarly applied McCarthy in the § 2241 context. See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners. See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021). McCarthy itself suggests that the second and third circumstances identified in that case encompass futility. See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act"). Additionally, in Shorter, the Eleventh Circuit suggested that the petitioner's futility argument related to one of

5

the three McCarthy circumstances. 803 F. App'x 336. District courts applying McCarthy have also recognized that the McCarthy circumstances case likely encompass some futility exception. See, e.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *2 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in McCarthy, a court may excuse the exhaustion requirement. There does not, however, appear to be any separate, independent futility exception, outside of the three McCarthy circumstances.[2] Where a petitioner relies on futility, the petitioner has the burden to demonstrate futility and "extraordinary circumstances." Jaimes v. United States, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006).[3]

---

[2] In McGee v. Warden, FDC Miami, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions. 487 F. App'x 516, 518 (11th Cir. 2012). However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected. Therefore, the conclusion about a futility requirement expressed in McGee is likely no longer correct. See Straughter v. Warden, FCC Coleman - Low, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in McGee likely did not survive Santiago-Lugo v. Warden, 785 F.3d 467 (11th Cir. 2015)).

Some courts have continued to state there is no futility exception to the exhaustion requirement for § 2241 petitioners. See, e.g., Martinez-Palmero v. Jenkins, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), adopted by, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); Moore v. Colon, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), adopted by, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020). However, that view appears to be largely based on the language in McGee, which, after Santiago-Lupo, is likely no longer binding.

[3] Respondent argues the futility exception to exhaustion should not apply. Doc. 7 at 4. But Curry argues that the administrative remedies process was futile. The Court does not address this issue further.

### B. Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative defense. See Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[respondents] bear the burden of proving that the [petitioner] failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies.[4] 541 F.3d at 1082. First, courts "look[] to the factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's] response, and if they conflict, takes the [petitioner's] version of the facts as true." Id.; see also

---

[4] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

7

Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test assesses whether there is a genuine dispute of material fact regarding the [petitioner's] failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the [petitioner's] allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, [respondent has] shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Once respondents have shown an administrative remedies procedure exists and the petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . . procedure effectively was unavailable to him." Nuckles v. Yeager, Case No. 1:25-cv-00125, 2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020)).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court

may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

### C.   The BOP's Administrative Remedies Procedures

The BOP has established an administrative remedy procedure through which an inmate may seek review of an issue related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions the BOP operates. Id. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff at the local facility ("BP-8"). Id. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request to the Warden ("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy request. Id. § 542.14(a). The Warden has 20 days to respond. Id. § 542.15(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response.[5] Id. The Regional Director has 30 days to respond. Id. § 542.18. If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within

---

[5]   An exception to filing a BP-9 (institutional level) is if the inmate "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution," in which case the inmate can file directly at the BP-10 level (regional office). 28 C.F.R. § 542.14(d). If the Regional Remedy Coordinator does not find the request is sensitive, it will not be accepted at the BP-10 level, and the inmate will be advised of this in writing. The inmate may then pursue the matter at the BP-9 level. Id.

30 days of when the Regional Director signed the response.  Id. § 542.15(a).  The Central Office has 40 days to respond.  Id. § 542.18.  Appeal to the BOP's Central Office is the final step in the BOP's administrative remedy process.  Id.  If BOP officials cannot respond to the request or appeal within the allotted time, the response time can be extended once: by 20 days at the institutional level, by 30 days at the regional level, or by 20 days at the Central Office level.  Staff are to inform the inmate of the extension in writing.  Id.

An inmate must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  Id. § 542.17(b).  Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level.  Id. § 542.18.  The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process."  Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

### D.     Analysis of Curry's Efforts at Exhaustion

The parties' accounts plainly conflict: Respondent asserts that Curry did not exhaust his available administrative remedies, and Curry asserts that he did.  Thus, the Court accepts as true Curry's assertion that he did exhaust his available remedies and must resolve this factual dispute.  The parties have had the chance to sufficiently develop the record.

The evidence submitted by the parties demonstrates that Curry submitted a BP-10 that was received in the Regional Office (BP-10) on October 1, 2024.  Doc. 7-1 at 25.  Curry submitted the BP-10 as a sensitive remedy request "due to a well founded fear of retaliation that

10

I have already been subjected to . . . ." Id.  Curry noted he was bypassing the filing of a BP-9 with the Warden.  Id.  The Regional Office rejected Curry's BP-10 by notice dated January 21, 2025, and stated the issue Curry raised is not sensitive and that he was to file a BP-9 before filing an appeal at the BP-10 level.  Id. at 24.  Curry asserts that when the Regional Office did not respond within 30 days of receipt, as the Regulations require, he assumed his BP-10 was denied and proceeded to file a BP-11 at the Central Office level.  Doc. 10 at 3.  Indeed, Curry submitted a copy of an envelope addressed to the Central Office, which appears to bear a postmark of November 1, 2024.[6]  Id. at 7.  Curry also states, once the time for the Central Office's response had elapsed, he filed his § 2241 Petition.  Id. at 3.  Curry signed his Petition on January 3, 2025, and it was filed in this Court on January 8, 2025.  Doc. 1.

Even though there is no evidence that the Central Office received Curry's BP-11, the Court accepts as true Curry's contention that he sent the BP-11 after not receiving any response to his BP-10 within the allotted time limit.  And even though the Regional Office disagreed with Curry that he did not present a sensitive issue in his BP-10, the Regional Office did not reject his filing at that level until January 21, 2025, which is after he filed his Petition and after the expiration of the time periods for BP-10 and BP-11 filings under the Regulations.  There is nothing before the Court indicating the BOP informed Curry in writing of any extension to the allotted time.  Curry did what was required of him under the BOP's administrative remedy procedure: file what he believed to be a sensitive remedy request at the BP-10 level; treat the

---

[6]    To be fair, the only thing the Court could make out on this copy is "1 N," as the rest of the postmark date is covered with stamps.  Doc. 10 at 7.  However, Curry also provided the receipt number for this certified mailing, which reveals the United States Postal Service came into possession of an item bearing this tracking number on November 5, 2024, the mailing was in the Washington, D.C. distribution center on November 19, 2024, and it was picked up at the Jesup, Georgia facility on December 16, 2024. https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=3&text28777=&tLabels=9589071052701414021510%2C%2C&tABt=false (last visited Sept. 9, 2025).

lack of response within the time allotted to be a rejection at the BP-10 level; file a BP-11 within the time allowed for the BP-11; and treat the lack of response to the BP-11 within the time period allotted to be a rejection at the final level.  It was only after Curry did what was required that he filed his Petition.  Curry exhausted his administrative remedies before filing his Petition, and the Court should deny Respondent's Motion to Dismiss on this ground.

## II.      This Court Lacks Jurisdiction Under the APA to Review Curry's FSA Claims

Curry asks the Court to direct the BOP to remove the state detainer from his record and to release him immediately.  Doc. 1 at 7.  It appears Curry contends the detainer that is lodged against him is the reason the BOP is not awarding him credit against his sentence under the FSA.  Curry also contends that BOP officials improperly increased his recidivism risk level, which resulted in deprivation of FSA credits.  Id. at 6.

Respondent asserts 18 U.S.C. § 3625 precludes this Court's review of the BOP's determination regarding eligibility for time credits under the FSA.  Doc. 7 at 8.  Respondent notes the BOP has discretion under 18 U.S.C. § 3621(h)(4) to award "incentives and rewards contemplated by the FSA," which renders the BOP's decision to award or to not award FSA credits to fall outside the scope of judicial review.  Id. at 9.  Respondent also contends that the change from low to medium for Curry's recidivism risk score was based on a proper assessment of Curry's underlying offense using the PATTERN program.  Doc. 7 at 11–12.  In response, Curry argues the APA does not divest courts of jurisdiction to determine the BOP's application of FSA credits.  Doc. 10 at 4.

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action.  See 5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the

12

making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626.  The Eleventh Circuit Court of Appeals has explained that § 3625 expressly precludes judicial review of agency adjudicative decisions but not rulemaking decisions, and courts generally lack jurisdiction as a result of § 3625, even in a § 2241 habeas action.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions.").  Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), report and recommendation adopted, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

The BOP's determination of whether an inmate is eligible to earn FSA time credits and eligible to apply those credits against his sentence falls under § 3625.  In Curry's case, the BOP determined he is not eligible for FSA credits based on his medium recidivism risk level score under 18 U.S.C. § 3632.  Doc. 7 at 11–12; Doc. 7-1 at 4–5 (both noting Curry was incorrectly assigned a "low" recidivism risk that was later recalculated to "medium").  Under § 3632, the Attorney General can reassess the recidivism risk of each prisoner periodically and determine

13

when a prisoner is ready for transfer to pre-release custody or supervised release under § 3624. 18 U.S.C. § 3632(a)(4), (7).  The BOP's determination of whether an inmate is eligible to earn FSA time credits and, thus, eligible to apply those credits toward his sentence is made under 18 U.S.C. § 3624(g).  A prisoner is eligible for pre-release custody or supervised release if he "has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the 'System') in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[.]"  18 U.S.C. § 3624(g)(1)(A).

The BOP's determination regarding Curry's eligibility for FSA credit generally falls under the purview of § 3625.  Here, Curry specifically challenges the BOP's determination that his medium risk level makes him ineligible to receive credit under the FSA.  The BOP's determination on this matter is an adjudicative, discretionary determination and not a rulemaking one.  Id. § 3624(g)(1)(D)(ii).  "And that decision is not subject to judicial review." Cook, 208 F.3d at 1319; see also Newell v. Fikes, Civil Action No.: 2:22-cv-53, 2023 WL 2543092, at *2 (S.D. Ga. Feb. 21, 2023) (noting determination of a prisoner's eligibility for FSA credits under § 3624(g) is discretionary and not subject to judicial review); Tennigkeit v. Taylor, No. 24-6322, 2025 WL 618740, at *1 (9th Cir. Feb. 26, 2025) (observing that a petitioner's "challenge to the BOP's assessment of his recidivism risk level is not reviewable in a § 2241 habeas petition"); Steelman v. FCI Beckley Warden, No. 5:23-CV-00599, 2024 WL 1781909, at *3 (S.D.W. Va. Apr. 5, 2024), report and recommendation adopted, 2024 WL 1769948 (S.D. W.Va. Apr. 24, 2024) ("Even if Steelman could show that his recidivism risk level was miscalculated, . . . 18 U.S.C. § 3625 seems to prohibit judicial review of a prisoner's . . . recidivism risk level."); Clinkenbeard v. United States, No. 24-CV-0252, 2024 WL 4650903, at *3 (D.D.C. Nov. 1, 2024) (rejecting recidivism risk determination challenge under § 3625 and collecting cases).

Regardless of the reason for the risk-level adjustment, the BOP's decision to assign Curry a medium recidivism risk is simply something this Court is not permitted to review. Additionally, Respondent has provided a reasonable explanation for the risk level adjustment, based on Curry's underlying offense and disciplinary history. Curry fails to respond to that explanation.

Curry's additional assertion that the BOP is denying him FSA credits based on the existence of an alleged detainer is immaterial at this point. The existence or non-existence of a detainer against Curry is not impacting Curry's eligibility for FSA credits. Rather, the BOP has determined Curry is not eligible for FSA credits because of his medium risk assessment level. Doc. 7-1 at 4–5, 7 (noting FSA risk is "in upper half."); McCoy v. FCI Berlin, Warden, No. 22-CV-527, 2024 WL 1348871, at *1 (D.N.H. Mar. 29, 2024) (concluding challenge that "the [BOP's] determination that he is ineligible for the application of FSA time credits due to his detainer from the State of New Jersey" is immaterial because the petitioner "is ineligible to apply his FSA time credits for a different reason: he has not maintained the required minimum or low risk of recidivism."). Furthermore, since February 6, 2023, the BOP no longer bars inmates from earning credits due to state detainers. See U.S. Dep't of Justice, Federal Bureau of Prisons, Change Notice to Program Statement No. 5410.01, First Step Act of 2018—Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4) (Feb. 6, 2023), https://www.bop.gov/policy/progstat/5410.01_cn.pdf (last visited Sept. 9, 2025); Salazar v. Warden, FCI-Mendota, No. 123CV00039, 2023 WL 3254633, at *3 (E.D. Cal. May 4, 2023) (noting that on February 6, 2023, the BOP deleted the requirement that inmates must have no detainers to have FTCs applied to their sentence). Thus, Curry is no longer barred from earning credits and having them applied to his sentence due to the detainer.

In sum, Curry has been deemed ineligible to apply FSA credits due to his recidivism risk level, and the BOP's risk level determination is not subject to judicial review. Curry's alternative allegation about the effect of a state detainer is both immaterial and lacks merit. For these reasons, Curry's Petition should be dismissed

**III.     Even if the Court Could Review the BOP's Determination of Curry's Eligibility, He Has No Liberty Interest in FSA Credits**

Respondent states, to the extent Fisher claims he has a liberty interest in FSA credits for use on his term of supervised release, such a claim fails. Doc. 7 at 5–6. In response, Curry states he "absolutely has a liberty interest when it comes to earned 'good time.'"[7] Doc. 10 at 4.

"In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment." Cook, 208 F.3d at 1322 (citing Am. Mfrs. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)). "A prisoner has 'no constitutional or inherent right' in being released before the completion of a valid sentence." Id. (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). "More particularly, if the relevant statute 'places no substantive limitations on official discretion' in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated." Id. (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (concluding no liberty interest arose from possibility of discretionary grant of incentive good time)); see also Barrion v. Dugger, No. 6:20-cv-41, 2022 WL 1548190 (S.D. Ga. Apr. 22, 2022) (finding prisoner "has no liberty interest in early release[]"), adopted by, 2022 WL 1538753 (S.D. Ga. May 16, 2022). This Court has specifically determined petitioners do not have a liberty interest in earned time credits under the

---

[7]     Having a liberty interest in good time credits is a different issue than that before the Court—whether Curry has a liberty interest in receiving FSA credits. It appears Curry just used the wrong terminology.

16

FSA.  Lozano v. Warden, FSL Jesup, Civil Action No.: 2:24-cv-79, 2020 WL 868214, at *1–2 (S.D. Ga. Feb. 25, 2025), adopted by, 2025 WL 860522 (S.D. Ga. Mar. 19, 2025); see also Torres v. Jenkins, Civil Action No. 1:23-cv-2885, 2024 WL 6473642, at *4 (N.D. Ga. May 1, 2024) (observing courts considering whether petitioners have a liberty interest in receiving FSA credits "have uniformly held that federal inmates" do not have said liberty interests and collecting cases).

Thus, the Court should **GRANT** this portion of Respondent's Motion and **DISMISS** Curry's purported liberty interest claim.  It is unnecessary to address the remaining portion of Respondent's Motion.

### IV.  Leave to Appeal *in Forma Pauperis*

The Court should also deny Curry leave to appeal *in forma pauperis*.  Though Curry has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x

321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Curry's Petition and Respondent's Motion to Dismiss and Curry's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** in forma pauperis status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss, **DISMISS** Curry's § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Curry in forma pauperis status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in

whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 9th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA